IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SARAH KHAN,

                    Plaintiff,

          v.                              Case No. 16 C 9493

FIRST AMERICAN TITLE COMPANY,             Judge Harry D. Leinenweber
et al.,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Sarah Khan ("Khan") brings a two-count Complaint, alleging that Defendant First American Title Company ("First American") violated Title VII by discriminating against her on account of her national origin and religion. The heart of Khan's claims owes to four incidents: her demotion; two refusals to reinstate her to her previously-held position; and a partial refusal to approve personal time off. First American moves for summary judgment (Dkt. 24) on all of Khan's claims and, for the reasons stated herein, the Motion is granted.

## I. BACKGROUND

Sarah Khan was born in India and is a practicing Muslim. (Pl.'s Resp. to Defs.' Facts ("SOF Resp.") ¶ 2, Dkt. 30.) In December 2012, First American hired Khan as an escrow officer ("EO"). (Id. ¶ 5.) In that role, Khan reported to Field Manager Tenishia Valentine ("Valentine"), who is Christian and African-American. (Id.) Khan continued working in that role until, in the Fall of 2013, Valentine's supervisor Kelli Winsky ("Winsky") (who, like Valentine, is neither

Muslim nor from India) decided to make staffing cuts in the so-called "mobile closing unit," where Khan worked. (Defs.' Reply to Pl.'s Add'l Facts ("SOF Reply") ¶ 1, Dkt. 35.) Winsky and Valentine conferred over which escrow officer should be removed, and Khan was selected. (*Id.* ¶¶ 5-7.) Valentine testified at her deposition that during that deliberative process, she never considered removing anyone but Khan. (*Id.*) Having made her decision, Valentine told Khan in November 2013 that she could either accept a demotion to escrow assistant or be terminated. Khan chose the demotion. (*Id.* ¶ 9; SOF Resp. ¶ 23.) In that lesser role, Khan lost her eligibility for thousands of dollars in bonuses. (SOF Reply ¶ 10.) She was also moved to a different part of the building and, it seems from context, moved out of the mobile closing unit. (*See* Ex. 1 to Defs.' Facts, Khan Dep. Tr. 100:3-22, Dkt. 25-1.) Valentine testified that at the time she demoted Khan, she decided never to reinstate Khan to the EO position. (SOF Reply ¶¶ 22, 26.)

Despite Khan's demotion, First American's internal systems were not updated to reflect Khan's new role for over two years, until April 28, 2016. (*Id.* ¶ 20.) Khan contends this error was nefarious, though she never explains specifically how. Instead, Khan points to a 2014 email in which First American's Human Resources Department asked Valentine about Khan's quarterly review. (*See* Ex. C to Pl.'s Facts, T. Valentine & K. Winsky Email Chain, Dkt. 31-3.) Valentine forwarded the HR inquiry to Winsky, adding, "I'm not sure how to respond . . . . I don't want to mention anything about her not being in [the mobile closing unit]." (*Id.*; SOF Reply ¶ 15, 20.) For her part, Winsky contends she does not know why Valentine would have wanted to keep this information

from HR.  (SOF Reply ¶ 17.)  Though this email seems fishy, Khan fails to explain how the cahoots it allegedly reveals actually affected her in any way.

To any extent, First American never re-elevated Khan to EO, despite such positions twice becoming available.  The first opening manifested in November 2015.  Khan did not apply for this position, and First American awarded it instead to Kendra Glossett ("Glossett"), who is African-American.  (SOF Resp. ¶¶ 34, 37.)  Winsky and Valentine both testified they do not know what religion, if any, Glossett practices. (*Id.* ¶ 42.)  The second EO position became available in May 2016, shortly after First American's system was at last updated to reflect Khan's demotion.  Khan did not apply for this position either.  (*Id.* ¶ 33.) First American filled that position with a Caucasian woman named Apryl Christensen.  Her religion and place of national origin are disputed. (SOF Reply ¶ 26.)

One other set of events is relevant.  In January 2016, Khan emailed First American Customer Care Manager Audrey Huggins, asking for fourteen days off in June and July 2016 to perform a religious pilgrimage to Mecca.  (SOF Resp. ¶¶ 54-55.)  Huggins referred the question to HR, who confirmed that if Khan did not take any personal time off before her proposed trip, she would have accumulated about twelve days of PTO.  HR also explained to Huggins that even though Khan requested the time for religious purposes, Huggins was not required to grant the full fourteen days.  HR concluded that "I think the two weeks, or whatever PTO she has at the time, would be a good compromise."  (*Id.* ¶¶ 57-58.)  Huggins

thereafter approved Khan for twelve of the requested fourteen days off.
(*Id.* ¶ 59.)

After the events described above, Khan filed a charge of
discrimination with the EEOC on June 26, 2016, complaining of
discrimination on account of her race, color, religion, and national
origin. (*Id.* ¶ 64.) She received her Notice of Right to Sue on or
about July 9, 2016, and thereafter filed the instant Complaint, limiting
herself to allegations of race- and national-origin-based
discrimination. (*See generally* Compl., Dkt. 1.)

## II.  DISCUSSION

On a summary judgment motion, the movant bears the burden of
establishing that there is no genuine dispute of any material fact and
that it is entitled to judgment as a matter of law. FED. R. CIV. P.
56(a); *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).
The Court construes facts favorably to the nonmoving party and grants
all reasonable inferences in its favor. *Bagley v. Blagojevich*, 646 F.3d
378, 388 (7th Cir. 2011) (quoting *Ogden v. Atterholt*, 606 F.3d 355, 358
(7th Cir. 2010)).

### A.  Time-Barred Allegations

Title VII permits aggrieved employees to seek redress in federal
court for discriminatory conduct occurring within 300 days of their
filing of the EEOC charge. 42 U.S.C. § 2000e-5(e)(1); *Stepney v.
Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). Claims
predicated upon conduct predating that window are barred. *Stepney*, 392
F.3d at 239.

Here, Khan filed her charge on June 26, 2016, meaning her window for actionable conduct extends back to August 31, 2015. She acknowledges as much, conceding that her earlier allegations—which in this case date back to November 2013—are not actionable. And yet, as Khan rightly points out, this bar does not preclude her from "using the prior [and barred] acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see West v. Ortho-McNeil Pharm. Corp.*, 405 F.3d 578, 581 (7th Cir. 2005). That said, the Court cannot and will not award any relief on Khan's pre-August 2015 allegations.

Khan contends that her demotion claim survives this bar, even though she was demoted, and her responsibilities and bonus-eligibility commensurately reduced, in November 2013. The claim survives, she says, because she was not "officially" demoted until April 2016, when First American at last updated its system to reflect her diminished title. Though First American's record keeping appears to be lacking, that shortcoming does not preserve Khan's otherwise untimely claim. The alleged discrimination occurred—and the filing limitations period therefore commenced—at the time the demotion decision was made and communicated to Khan. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) ("Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured."); *accord Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 679 n.3 (7th Cir. 2014) (citing *Cada*'s discovery

rule approvingly).  Thus, Khan's demotions, both *de facto* and "official,"
are time-barred.

What remain are Khan's allegations concerning the refusal of
personal time off in January 2016 and First American's failures to
promote her back to EO in November 2015 and May 2016.

### B.  Timely Title VII Claims

In the Seventh Circuit, courts weighing Title VII discrimination
claims ask simply whether the evidence shows that "the plaintiff's race,
ethnicity, sex, religion, or other proscribed factor caused the discharge
or other adverse employment action" she allegedly suffered.  *Ortiz v.
Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).  This inquiry
demands the reviewing court consider the evidence as a whole.  *Id.*  In
so doing, the court may apply the so-called *McDonnell Douglas* burden-
shifting framework.  *See Ortiz*, 834 F.3d at 766 (citing *McDonnell Douglas
Corp. v. Green*, 411 U.S. 792 (1973)).  Under that method, the plaintiff
must show she: (1) is a member of a protected class; (2) suffered a
materially adverse employment action; (3) was meeting her employer's
legitimate expectations; and (4) was treated less favorably than
similarly situated employees who did not engage in protected activity.
*Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896-97 (7th Cir.
2015) (citation omitted).  When the plaintiff succeeds in making out
this *prima facie* case, the burden shifts to the defendant to offer a
legitimate, nondiscriminatory reason for the allegedly discriminatory
employment action.  *Id.*  If the defendant does so, the burden shifts
back to the plaintiff to prove that the proffered explanation is
pretextual.  *Id.*  It is undisputed that Khan, a Muslim woman born in

India, is a member of two protected classes.  Beyond this, her case
stumbles.

### 1.  *Refusal of Requested Personal Time Off*

Khan contends she suffered an adverse employment decision when
Huggins refused to permit her to take two more days PTO than she had
accrued to journey to Mecca.  But if, as a matter of law, this refusal
cannot amount to a materially adverse employment decision, this claim
has no legs and First American is entitled to summary judgment.  Adverse
employment actions include termination, demotion, decrease in wages or
salary, a material loss of benefits, and significantly diminished
material responsibilities.  *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th
Cir. 1996) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d
132, 136 (7th Cir. 1993)).  To suffice, these actions must impose
something "more disruptive than a mere inconvenience."  *Rhodes v. Ill.
Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Crady,* 993
F.2d at 136)), *overruled on other grounds by Ortiz v. Werner Enters.,
Inc.*, 834 F.3d 760 (7th Cir. 2016).  First American contends that
Huggins' refusal of the two extra days cannot constitute a material loss
of benefits because these days were just that—extra.  Because Khan had
not accrued these two days, they were not her benefits to lose.  The
Court agrees.  Moreover, Khan has not shown that in refusing her the
requested time off, Huggins treated Khan less favorably than she treated
other non-Muslim, non-Indian employees.  *See Sklyarsky*, 777 F.3d at 896-
97.  On this score, Khan did not have to demonstrate that Huggins allowed
greater-than-accrued time off to Christian employees taking mission
trips or to Jewish employees making Aliyah—although such evidence would

weigh strongly in Khan's favor—rather, she needed only to establish that Huggins allowed any non-Muslim, non-Indian employee more PTO than they had earned.  This Khan failed to do.  *Id.*; *cf. Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 685 (7th Cir. 2014) (affirming award of summary judgment against plaintiff under *McDonnell Douglas* framework where plaintiff "failed to identify, let alone discuss, a similarly situated, [non-protected-class-member] employee who was treated more favorably").  When taking the evidence as a whole, Khan's PTO claim is deficient as a matter of law.  The Court must accordingly grant summary judgment in Defendant's favor.

### 2.  *Failure to Promote - November 2015*

Khan's allegations concerning her non-selection by First American for the November 2015 EO position resemble a failure-to-promote claim, though Khan quibbles with that definition.  She instead argues these allegations recite a "failure to reinstate/utilize/promote" claim, given that at the time the November 2015 position became available, Khan was still technically employed as an EO and thus could not have been "promoted" into a role she already held.  (Pl.'s Resp. at 1, Dkt. 32.)  As described below, however, this distinction ultimately fails to make a difference in Khan's case.  Idiosyncrasies aside, the Court construes these allegations as a failure-to-promote claim; despite Khan's definitional objection, she does not provide a cognizable alternative, and the Court does not see one either.

The failure-to-promote variety of adverse-employment-action claims requires an added degree of specificity to succeed.  A successful plaintiff must show she applied, was qualified, and rejected for the

position, and further that the employer gave the promotion instead to someone outside of the protected group who was not better qualified than she. *Carter v. Chi. State Univ.*, 778 F.3d 651, 660 (7th Cir. 2015) (citing *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003)). Even where the plaintiff does not apply for the position, however, she can still prevail on her claim if she demonstrates that the employer's discriminatory practices deterred her from applying. *See Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004); *cf. Lyons v. England*, 307 F.3d 1092, 1114 (9th Cir. 2002) (reciting excusal of application requirement where the "trier of fact could reasonably infer that promotions were not awarded on a competitive basis").

Khan did not apply for the November 2015 position, but she contends that failure is not fatal to her claims. Instead, she offers three explanations for why the Court should exempt her from the application requirement: First, due to First American's outdated records, Khan was still technically employed as an EO as of November 2015 and should not be expected to apply for a position she already held; second, Valentine had privately decided never to reinstate Khan as an EO, so any application would have been futile; and third, Glossett, the successful candidate, might not have actually applied for the position, meaning Khan might have been deprived of the chance to apply.

The central flaw in the first explanation is that Khan's improper job title in First American's system cannot have contributed to Khan's failure to apply unless Khan knew of the error at the time and believed that error bore some significance to her position at First American. The record is not clear whether Khan knew of the nomenclature error in

November 2015, although there is circumstantial evidence on both sides. Weighing in favor of Khan's knowledge of the error is her contention that after her oral demotion in November 2013, First American did not transfer Khan to Huggins, who oversaw escrow assistants, but rather left Khan in Valentine's department (which presumably was staffed only by EOs) (SOF Reply ¶ 11), as well as her contention that Valentine, not Huggins, signed off on her performance reviews each year from 2013 to 2016. (*Id.*) Weighing in favor of Khan's ignorance is her testimony that after her demotion, Khan performed the job of an escrow assistant and reported to Huggins, who managed her day-to-day performance and job responsibilities. (*See* Ex. 1 to Reply in Supp. of Summ. J., Khan Dep. Tr. 16:16-21, Dkt. 35-1; Ex. 1 to Defs.' Facts, Khan Dep. Tr. 104:7-13, Dkt. 25-1.) But no matter how the trier of fact weighs this circumstantial evidence, nothing in the record suggests Khan believed that error held any practical meaning for her. Despite the system being out of date, Khan admittedly worked and was compensated as an escrow assistant starting after she was demoted in November 2013. She neither alleges nor points to evidence in the record suggesting that notwithstanding her day-to-day responsibilities, she believed she could be re-elevated to the EO position without first applying for it. Nor does she establish any evidence showing that she knew of any conduct by First American management that deterred her from applying.

In Khan's second explanation for why she should be excused from the application requirement, she points to Valentine's admission that after she demoted Khan, Valentine privately decided she would never reinstate Khan as an EO. (Ex. B to Pl.'s Facts, Valentine Dep. Tr. 41:17-

43:8, Dkt. 31-2.)  From Khan's perspective, this concession is ironclad proof of discrimination.  Yet nothing in the record suggests Khan learned of Valentine's resolution prior to her deposition in December 2017.  (*See generally* Ex. B to Pl.'s Facts, Valentine Dep. Tr., Dkt. 31-2.)  As such, Valentine's private resolve does not assist Khan in proving she felt deterred from applying, so it does not absolve her of the requirement to prove she applied in the first place.  *See Hudson*, 375 F.3d at 558.

In Khan's third explanation, she suggests it is unclear whether Glossett actually applied for the November 2015 position.  Though Khan does not say as much, the implication seems to be that if Glossett never applied, there was perhaps no opportunity for Khan to apply; instead, Glossett might have been plucked from the lower ranks for promotion by First American management, who chose Glossett over Khan because of prejudice.  In support of this speculation, Khan points out that Glossett's job application suffers from certain oddities and seems to be incomplete.  (SOF Resp. ¶ 37 (citing Ex. 2 to Defs.' Facts, Glossett Application, Dkt. 25-2).)  And yet, despite all this conjectural storm and stress, Khan concedes that Glossett applied, interviewed, and was ultimately hired to the position.  (SOF Resp. ¶ 37.)  Her indefinite suggestions to the contrary are thus much ado about nothing.  Thus, as demonstrated above, none of Khan's justifications for failing to apply to the November 2015 position pass muster.

As an aside, the Court notes that even if Khan had not failed to apply, she would face an uphill battle in proving at trial that she was at least as qualified as Glossett.  Khan was hired into the EO position at First American in December 2012.  Her previous relevant experience

consisted of two years in an EO position at another company.  (SOF Resp. ¶¶ 4-5.)  Glossett, meanwhile, had by November 2015 worked for First American as an escrow assistant for five years, as an EO for seven years (three of which she also worked as an escrow manager), as an escrow trainer for three years, as an escrow disbursement coordinator for two years, and as an escrow team lead for more than two years.  (SOF Resp. ¶ 38.)  While the parties have not advised the Court regarding the responsibilities of these roles nor their respective positions in the business' hierarchy, it is clear that Khan's five years' experience in the industry pales in comparison to Glossett's nineteen.

To any extent, the Court need not say as a matter of law whether Khan and Glossett were at least equally qualified.  Khan has not shown she is excepted from the application requirement, so her failure to apply for the November 2015 position dooms her allegations based on the same. The failure-to-promote claim fails as a matter of law, so the Court awards summary judgment to First American in relevant part.

### 3.  *Failure to Promote - May 2016*

In Khan's response brief, she contends that she was again passed over for promotion in May 2016, this time for a candidate named Apryl Christensen.  The problem here is that Khan did not raise this allegation until after First American moved for summary judgment.  Christensen and the May 2016 position make no appearance in her complaint, and Khan testified at her deposition that the November 2015 position was the only one she sought to challenge in her charge.  (Ex. 30 to Reply in Supp. of Summ. J., Khan Dep. Tr. 60:20-61:6, Dkt. 36-2.)  "A plaintiff cannot create a genuine issue of material fact, thereby precluding summary

judgment, by raising facts for the first time in response to defendant's motion for summary judgment which were not raised in the complaint." *Bassiouni v. CIA*, No. 02 C 4049, 2004 WL 1125919, at *8 (N.D. Ill. Mar. 31, 2004) (citation omitted), *aff'd*, 392 F.3d 244 (7th Cir. 2004); *see Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). It is too late to raise this new allegation, and the Court will not entertain it.

### 4. *Miscellaneous Claims*

Finally, the Court must consider a batch of timely claims arising from Khan's alleged treatment during First American's Spring 2016 Employee Appreciation Week. During that week, First American decorated employees' cubicles and gave employees "goody bags." It is undisputed that while some number of other cubicles were decorated, Khan's was not. (SOF Resp. ¶ 45.) Further, the parties agree that Khan received her goody bag later than many (if not all) other employees received theirs. (*Id.* ¶¶ 43-44.) Khan contends these discrepancies owe to Winsky's discriminatory bias. First American contends that because it and Khan had previously agreed that Khan could work from 9:00 a.m. to 6:00 p.m., rather than the standard 8 to 5, Khan was not yet present in the office when the cubicles were decorated, and the goodies distributed. (*Id.* ¶¶ 25, 43-44.) This explanation justifies the tardy goody distribution, though not necessarily Defendant's passing over of Khan's cubicle, but it makes no difference. Though minor acts of unkindness—if that is what these were—can indeed be motivated by discrimination, they do not amount to legally-actionable claims under Title VII. *See Rabinovitz*, 89 F.3d

at 488 (reciting examples of conduct qualifying as adverse employment actions). The Court grants summary judgment to Defendant on these remaining claims, which erases the balance of Khan's Complaint.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, Defendant First American's Motion for Summary Judgment (Dkt. 24) is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:  9/11/2018